UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
SUSAN RODRIGUEZ,

                    Plaintiff,

                                        <u>MEMORANDUM & ORDER</u>
          -against-                     14-CV-3815(JS)(ARL)

GLEN COVE CITY SCHOOL DISTRICT,
GLEN COVE CITY BOARD OF EDUCATION,
NELSON IOCOLANO, individually and
in his official capacity, JOSEPH
LARIA, individually and in his
official capacity, LOUIS ZOCCHIA,
individually and in his official
capacity, and IDA MCQUAIR,
individually and in her official
capacity,

                    Defendants.
------------------------------------X
APPEARANCES
For Plaintiff:          Steven A. Morelli, Esq.
                        The Law Offices of Steven A. Morelli, P.C.
                        1461 Franklin Ave.
                        Garden City, NY 11530

For Defendants:         Adam I. Kleinberg, Esq.
                        Kevin Levine, Esq.
                        Sokoloff Stern LLP
                        179 Westbury Ave.
                        Carle Place, NY 11514


SEYBERT, District Judge:

          Plaintiff Susan Rodriguez ("Plaintiff") commenced this

action on June 18, 2014, against defendants the Glen Cove City

School District (the "District"), the Glen Cove City Board of

Education (the "Board"), Nelson Iocolano ("Iocolano"), Joseph

Laria ("Laria"), Louis Zocchia ("Zocchia"), Cassandra Shannon ("Shannon"), Ida McQuair ("McQuair"), and Janice Larocca ("Larocca" and collectively, "Defendants").[1]  On April 24, 2015, Plaintiff filed a Second Amended Complaint (the "SAC") alleging that Defendants discriminated and retaliated against her on the basis of her race and because of her disability, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 29 U.S.C. § 2000e et seq.; the New York State Human Rights Law ("NYSHRL"); the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., N.Y. EXEC. LAW § 296 et seq.; 42 U.S.C. § 1981; the Equal Protection Clause of the Fourteenth Amendment.  (See SAC, Docket Entry 17.)  Pending before the Court is Defendants' motion to dismiss the Second Amended Complaint.  (Docket Entry 19.)  For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND[2]

Plaintiff, an African-American female who suffers from multiple sclerosis, is employed by the District as a tenured mathematics teacher in the Finley Middle School (the "School").

---

[1] Shannon and Larocca were subsequently terminated as defendants in this action on April 27, 2015.

[2] The following facts are drawn from the Second Amended Complaint ("SAC") and are assumed true for the purposes of this Memorandum and Order.

(SAC ¶¶ 1, 19.) Plaintiff began working at the School in 1998. (SAC ¶ 19.) Throughout her employment, Plaintiff received positive evaluations, some of which credited her with being a mentor to other teachers within the school. (SAC ¶ 22.) In 2010, for example, Shannon began teaching seventh grade math for the first time. Upon Shannon's request, Plaintiff provided Shannon with lesson plans that Plaintiff created. Shannon found the lesson plans useful, used them throughout the year, and in the fall of 2011 she passed the lesson plans to a new hire. (SAC ¶ 23.)

In the spring of 2012, Plaintiff was appointed to teach the seventh grade honors math class. (SAC ¶ 25.) She began teaching the class in the fall of 2012. That fall, Defendant Iocolano was hired as the School's Principal. (SAC ¶ 26.) According to Plaintiff, Iocolano harbored a discriminatory animus against African Americans, as evidenced by, among other things, his refusal to hang a portrait of Nelson Mandela in his office. (SAC ¶ 26.)

In October 2012, Plaintiff discovered that several students failed her first graded test. (SAC ¶ 28.) Plaintiff was concerned, and upon investigating, discovered that some of her students did not meet the academic requirements to be in the seventh-grade honors math class. (SAC ¶ 29.) Plaintiff alleges, upon information and belief, that several Caucasian students were placed in the honors class because their parents wanted the

students in a class with predominantly white students. (SAC ¶¶ 30-31.) Plaintiff voiced her concerns to Iocolano and Israel, and suggested transferring some students out of her class. (SAC ¶¶ 33-34.) Iocolano and Israel ignored her suggestion and instead instructed Plaintiff to stop using the pacing guide and curriculum maps that were created for the course in the summer of 2012. (SAC ¶ 34, 36.)

At the end of October, a medical emergency required Plaintiff to take a leave of absence until mid-December. (SAC ¶ 38.) During her absence, defendant Shannon taught Plaintiff's seventh grade honors math class. (SAC ¶ 39.) Iocolano called Plaintiff on December 14, 2012 and informed her that class performance had improved under Shannon, and that students preferred Shannon to Plaintiff. (SAC ¶ 40.) Iocolano also told Plaintiff that she would need to observe a number of Shannon's classes before she could resume teaching the seventh grade honors math class. (SAC ¶ 40.)

Plaintiff returned to work on December 17, 2012 and observed Shannon teaching her class. Plaintiff claims that, as a veteran educator, she was embarrassed to be forced to observe another teacher in front of her students. (SAC ¶ 41.) When Plaintiff eventually began teaching honors math again in January 2013, she was required to send all of her lessons, homework

assignments, and other written materials to Shannon for review. (SAC ¶ 42.)

Following a mid-term exam, the School received complaints from parents about both the difficulty of the honors math course and Plaintiff's teaching abilities. (SAC ¶¶ 44-46.) Defendant McQuair, a member of the Board of Education and the mother of one of Plaintiff's students, complained directly to Plaintiff about her performance. (SAC ¶ 48.) According to Plaintiff, she spoke to her "with a demeaning and condescending tone." (SAC ¶ 48.) On one occasion, McQuair left a message for Plaintiff, stating that "the honors math class was too difficult." (SAC ¶ 49.) When Plaintiff called McQuair back, McQuair threatened Plaintiff's job and stated that she was a member of the District Superintendent's inner circle. (SAC ¶¶ 49-50.)

On February 5, 2013, Plaintiff was called to a meeting at the Superintendent's office. There, Plaintiff was removed from her position as an honors math teacher and replaced by Shannon for the remainder of the year. (SAC ¶ 52.) Plaintiff claims, upon information and belief, that McQuair was influential in this decision. (SAC ¶ 52.) Iocolano informed Plaintiff during the meeting that: (1) she would need to be observed for the remainder of the year in the "regular" seventh-grade math class she was assigned to teach; (2) she needed to continue to observe Shannon's

classes; and (3) if her performance did not improve, the District would take measures to relieve her of her duties.  (SAC ¶¶ 55-56.)

On February 25, 2013, Iocolano observed Plaintiff's class and assigned her a rating of "developing," which "indicated her lesson was less than effective."  (SAC ¶ 57.)  This was the first negative performance evaluation that Plaintiff received during her fourteen-year tenure with the District.  (SAC ¶ 57.)  Although it was a generally accepted practice that teachers who felt they were observed on a "bad day" could request a second observation, Plaintiff's request for a second observation was denied.  (SAC ¶ 58.)

I.   Saturday Academy

In February 2013, Plaintiff proposed the idea of holding a "Saturday Academy" program to bring the students up to State-mandated standards.  (SAC ¶ 60.)  When the school began organizing Saturday math classes, Plaintiff applied for the teaching position.  (SAC ¶ 61.)  Plaintiff was previously told she would be selected for the position because she helped develop the program.  (SAC ¶ 62.)  On March 7, 2013, however, Plaintiff was informed that another Caucasian teacher had been selected for the position.  (SAC ¶ 63.)

II.  Plaintiff's EEOC Complaint

On March 28, 2013, Plaintiff filed a complaint against Defendants with the EEOC.  (SAC ¶ 65.)  Subsequently, Plaintiff

was informed that she was not scheduled to teach honors math class during the 2013-2014 school year. (SAC ¶ 66.)

In May 2013, Plaintiff underwent another formal performance evaluation and received an "Effective" rating. (SAC ¶ 68.) But in September 2013, she was given an overall rating of "Developing" for her 2012-2013 yearly performance. (SAC ¶ 68.) In addition, she was designated as the "teacher of record" for the entire 2012-2013 school year, even though she was out on medical leave for a significant portion of the year. (SAC ¶ 69.) Plaintiff claims that this designation "served to artificially lower [her] overall performance score." (SAC ¶ 69.)

Plaintiff also alleges that Defendants temporarily assigned Plaintiff to a classroom without air conditioning for the 2013 to 2014 school year. (SAC ¶ 71.) Because Plaintiff suffers from multiple sclerosis, hot temperatures trigger her symptoms. (SAC ¶ 72.)

III. <u>Procedural History</u>

On March 25, 2015, the Court issued an Order (the "March 2015 Order") dismissing Plaintiff's claims for First Amendment retaliation and for maintaining a hostile work environment. (March 2105 Order, Docket Entry 16, at 24.) However, the Court granted Plaintiff leave to amend to allow Plaintiff to allege discrimination claims. Plaintiff filed the SAC on April 24, 2015, (Docket Entry 17), and Defendants now move to dismiss the SAC.

(Docket Entry 19.)  Defendants principally argue that Plaintiff
(1) does not allege a disability discrimination claim, (2) does
not state a claim for retaliation, and (3) Plaintiff's state law
claims must be dismissed against certain defendants.  (Defs.' Br.,
Docket Entry 21, at 9-14, 16-19, 20-24.)

DISCUSSION

## I.  Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss, the Court
applies a "plausibility standard," which is guided by "[t]wo
working principles."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.
Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); Harris v. Mills, 572
F.3d 66, 71-72 (2d Cir. 2009).  First, although the Court must
accept all allegations as true, this "tenet" is "inapplicable to
legal conclusions;" thus, "[t]hreadbare recitals of the elements
of a cause of action, supported by mere conclusory statements, do
not suffice."  Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949-50;
Harris, 572 F.3d at 72.  Second, only complaints that state a
"plausible claim for relief" can survive a Rule 12(b)(6) motion to
dismiss.  Iqbal, 556 U.S. at 679, 129 S. Ct. at 1950.  Determining
whether a complaint does so is "a context-specific task that
requires the reviewing court to draw on its judicial experience
and common sense."  Id.; Harris, 572 F.3d at 72.

In deciding a motion to dismiss, the Court is confined
to "the allegations contained within the four corners of [the]

complaint." _Pani v. Empire Blue Cross Blue Shield_, 152 F. 3d 67, 71 (2d Cir. 1998). However, this limitation has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. _See_ _Chambers v._ _Time Warner, Inc._, 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted); _Kramer v. Time Warner Inc._, 937 F.2d 767, 773 (2d Cir. 1991).

## II. Adverse Employment Action

Defendants argue that Plaintiff's race and disability discrimination claims must be dismissed because the Complaint does not allege that Plaintiff suffered an adverse employment action, a required element of both a discrimination claim brought under either Title VII or the ADA. (Defs.' Br. at 9-10.) "To make out a _prima facie_ discrimination claim, a plaintiff must demonstrate the following: (1) [s]he was within the protected class; (2) [s]he was qualified for the position; (3) [s]he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." _Chung v. City Univ. of N.Y._, 605 F. App'x 20, 21 (2d Cir. 2015) (internal quotation marks and citation omitted)

A plaintiff "sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and

conditions of employment." Galabya v. N.Y. City Bd. of Educ., 202
F.3d 636, 640 (2d Cir. 2000) (citations omitted). To be
"materially adverse," the change must be "more disruptive than a
mere inconvenience or an alteration of job responsibilities." Id.
(quoting Crady v. Liberty Nat. Bank & Trust Co. of Ind., 993 F.2d
132, 136 (7th Cir. 1993). Examples include "termination of
employment, a demotion evidenced by a decrease in wage or salary,
a less distinguished title, a material loss of benefits,
significantly diminished material responsibilities, or other
indices . . . unique to a particular situation." Chung, 605 F.
App'x at 22 (quoting Sanders v. N.Y.C. Human Res. Admin., 361 F.3d
749, 755 (2d Cir. 2004) (ellipsis in original). Here, Plaintiff
claims that she suffered adverse employment actions when she was:
"(1) stripped of her position as an Honors Math teacher [from]
2012-2013; (2) denied the paid position of Saturday Math Academy
teacher; (3) denied the position of Honors Math teacher [from]
2013-2014; and (4) given negative performance evaluations, as well
as being erroneously designated as teacher of record." (Pl.'s
Opp. Br., Docket Entry 23, at 10.) The Court will address each of
Plaintiff's allegations below.

A. Saturday Math Academy

The fact that Plaintiff was not chosen for a position as
a Saturday math academy teacher is not an adverse employment
action. Valenti v. Massapequa Union Free Sch. Dist., No. 09-CV-

977, 2012 WL 1038811, at *14 (E.D.N.Y. Mar. 28, 2012) ("Not receiving a requested or desired assignment is not an adverse employment action."); <u>Ruggieri v. Harrington</u>, 146 F. Supp. 2d 202, 217 (E.D.N.Y. 2001) (Plaintiff "suffered no adverse employment action as a result of being denied the occasion to serve as department chair and to teach certain summer courses that she wanted to teach . . . ."). Importantly, Defendants' decision not to allow Plaintiff to be a Saturday math academy teacher was not a material <u>change</u> in the terms and conditions of her employment as a tenured middle school teacher. Although Plaintiff believed she would be selected to teach the class, Defendants' failure to fulfill her expectation does not create an adverse employment action.

    B.  <u>Plaintiff's Removal as the teacher of the Honors Math Class</u>

Plaintiff also argues that Defendants' decision to remove her as the seventh-grade honors math class teacher was an adverse employment action. (Pl.'s Opp. Br. at 10.) Not all lateral transfers within an institution rise to the level of an adverse employment action. Only internal transfers which "result[] in a change in responsibilities so significant as to constitute a setback to the plaintiff's career" are actionable, while "pure" lateral transfers--those which cannot be classified as demotion in form or substance--are not. <u>Galabya</u>, 202 F.3d at

640-41 (2d Cir. 2000) (citing Rodriguez v. Board of Educ., 620 F.2d 362 (2d Cir. 1980)). For example, In Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008), the court sustained a jury's finding that it was an adverse employment action to transfer a Walmart employee from a job working at the in-store pharmacy to a position "collecting shopping carts and garbage in the parking lot." Although the employee's wages and benefits remained unchanged, the Court found that the transfer resulted in a "less distinguished title" and "significantly diminished material responsibilities." Id. (quoting Patrolmen's Benevolent Ass'n of N.Y. v. City of N.Y., 310 F.3d 43, 51 (2d Cir. 2002).

Plaintiff alleges that she was removed from her position teaching an honors math class and relegated to a position teaching a "regular" math class. Although one can infer that teaching an honors math class could be more prestigious than teaching a regular math class, the Complaint is devoid of facts indicating that teaching "regular" seventh-grade math was materially less prestigious, more suited to Plaintiff's skills, or less conducive to her career advancement. See Giambattista v. Am. Airlines, Inc., 5 F. Supp. 3d 284, 294 (E.D.N.Y.) aff'd, 584 F. App'x 23 (2d Cir. 2014). The Complaint therefore does not plausibly allege that removing Plaintiff as the teacher of honors math, on its own, was an adverse employment action.

C.  Negative Performance Evaluations

In the disparate treatment context, receiving negative performance evaluations is not an adverse employment action unless there is an accompanying negative result.  Valentine v. Standard & Poor's, 50 F. Supp. 2d 262, 283 (S.D.N.Y. 1999) aff'd, 205 F.3d 1327 (2d Cir. 2000); Benedith v. Malverne Union Free Sch. Dist., 38 F. Supp. 3d 286, 325 (E.D.N.Y. 2014) ("alleged unfair performance evaluations do not constitute an adverse employment action for purposes of the anti-discrimination statutes"); Kaur v. N.Y. City Health & Hosps. Corp., 688 F. Supp. 2d 317, 332 (S.D.N.Y. 2010) (explaining that "a negative performance evaluation only qualifies as an adverse employment action if there are accompanying adverse consequences affecting the terms of employment").  Here, no material negative consequences flowed from the "Developing" score Plaintiff received on her performance evaluations in either February or September 2013.  Notably, Defendants removed Plaintiff from her position teaching the honors math program, required her to observe Shannon's classes, and required her to be monitored before she received her first negative performance evaluation. See Gordon v. City of N.Y., No 14-CV-6115, 2015 WL 3473500, at *8 (S.D.N.Y. June 2, 2015).  Therefore, Plaintiff cannot rely upon her negative performance reviews as a basis for discrimination claims.

13

D.    <u>Atmosphere of Adverse Acts</u>

Plaintiff also alleges that even if each individual incident described in the Complaint is not an adverse employment, the incidents collectively amount to an adverse action.  (Pl.'s Opp. Br. at 12.)  The Second Circuit has held that "a combination of seemingly minor incidents" may become an adverse employment action once the incidents "reach a critical mass."  <u>See Phillips v. Bowen</u>, 278 F.3d 103, 109 (2d Cir. 2002).  Although there is still some debate whether the "atmosphere" analysis should be applied to disparate impact discrimination claims, the Second Circuit has implicitly recognized the doctrine's applicability.  <u>See</u>, <u>Moskowitz v. Coscette</u>, 3 F. App'x 1, 5 (2d Cir. 2001) (holding that "the combination of the commencement of disciplinary proceedings against the plaintiff, his assignment to desk duty with the incident loss of potential overtime, negative evaluations, and denial of promotion to sergeant were a sufficient basis on which the jury could conclude that the plaintiff suffered adverse employment action."); <u>Cunningham v. N.Y. Dep't of Labor</u>, 326 F. App'x 617, 619 (2d Cir. 2009) (a "litany of actions" including (1) unfounded charges of time abuse, (2) moving the plaintiff's office away from his staff; (3) opposition to hiring plaintiff's son in a summer job; (4) discontinuing a training conference organized by plaintiff; and (5) excluding plaintiff from a conference and a decision to hire a consultant did not

create an adverse employment action); see also Cotterell v. Gilmore, 64 F. Supp. 3d 406, 431-32 (E.D.N.Y. 2014) (collecting cases), appeal denied, No. 12-CV-3808, 2015 WL 6550761 (E.D.N.Y. Oct. 27, 2015).

Assuming that multiple incidents can be aggregated to form an adverse employment action for purposes of a discrimination claim, the "key inquiry remains, [ ] whether that combination changed the terms of a plaintiff's employment." See Mento v. Potter, No. 08-CV-0074S, 2012 WL 1908920, at *8 (W.D.N.Y. May 25, 2012). Plaintiff claims the following incidents, taken together, amount to an adverse employment action for purposes of her discrimination claims: (1) being transferred from a position teaching honors math to one teaching regular math, (2) not being selected for a post teaching the Saturday math academy, (3) being subject to increased scrutiny; (4) receiving two negative performance evaluations; and (5) being wrongfully designated as the teacher of record for the 2012-2013 school year. (Pl.'s Opp. Br. at 10.) Drawing all favorable inferences in Plaintiff's favor, it would be inappropriate at the motion to dismiss stage to hold that these actions collectively do not amount to an adverse employment action. Notably, most of these incidents occurred in a single month, including Plaintiff's removal from her position as an honors math teacher; increased scrutiny brought upon Plaintiff in the form of monitoring; Plaintiff not being selected as a

15

Saturday academy teacher; and Plaintiff receiving the her first negative performance evaluation in her fourteen-year tenure with the District. Although Plaintiff's salary, benefits, tenure, and designation as a seventh-grade math teacher remained unchanged, it is conceivable that her opportunities for advancement were diminished as a result of these events. Discovery is therefore necessary to determine whether, collectively, these events amounted to an adverse employment action.

III. <u>Disability Discrimination</u>

Defendant argues that Plaintiff has not alleged facts showing Plaintiff suffered an adverse action under circumstances giving rise to an inference of disability discrimination. (Defs.'s Br. at 14.) In its March 2015 Order, the Court found that Plaintiff's allegations were "devoid of any allegations that raise even a remote inference that the Defendants even knew of Plaintiff's having Multiple Sclerosis," nor did the Amended Complaint plead facts showing that Plaintiff was subject to discrimination <u>because</u> of her illness. (March 2015 Order at 18-19.) The SAC does not set forth any additional facts showing that Plaintiff was discriminated against because she was disabled. Notably, Plaintiff does not even oppose Defendants' motion to

dismiss her disability discrimination claim. Therefore, Plaintiff's disability discrimination claim is DISMISSED.

IV. <u>Retaliation</u>

Plaintiff alleges that Defendants retaliated against her for filing a discrimination claim with the U.S. Equal Employment Opportunity Commission (the "EEOC") by: (1) denying her the opportunity to teach seventh-grade honors math for the 2013-2014 school year, (2) issuing her negative performance evaluation in September 2013 for the 2012-2013 academic year, and (3) being designated as the teacher of record for the 2012-2013 school year, despite the fact that she was out on medical leave for approximately two months. (Pl.'s Opp. Br. at 13-15.) To meet the initial burden of establishing a <u>prima facie</u> case of retaliation, Plaintiff must show that: "(1) [she] was engaged in protected activity; (2) [Defendants] w[ere] aware of that activity; (3) [Plaintiff] suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." <u>Reed v. A .W. Lawrence & Co.</u>, 95 F.3d 1170, 1178 (2d Cir. 1996) (citation omitted).

Here, Plaintiff has failed to allege a plausible causal connection between her protected activity--filing her EEOC complaint--and an adverse employment action. As an initial matter, Defendants' failure to assign Plaintiff to teach the honors math class cannot form the basis of a retaliation claim because

Plaintiff was removed from her position as the honors math teacher in February 2013, before she filed her EEOC complaint on March 28, 2013. In addition, the only causal connection between Plaintiff's protected activity and her negative performance evaluation in September 2013 is the timing of these events. However, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001); see also Floyd v. S. Westchester BOCES, No. 14-CV-5842, 2015 WL 5459992, at *9 (S.D.N.Y. July 31, 2015). Here, the bulk of the conduct Plaintiff complains of took place before she filed her EEOC complaint. Indeed, Plaintiff received her first negative performance evaluation and was removed from her position as an honors math teach in February 2013, before filing her EEOC complaint. In addition, she received an intervening "Effective" performance evaluation in May 2013, shortly after her protected activity. Therefore, she has not plausibly alleged a causal connection between her protected activity and any adverse employment actions. Plaintiff's retaliation claim is therefore DISMISSED.

## IV. Plaintiff's Aiding and Abetting Claims

Plaintiff brings claims against Iocolano, Laria, Zocchia, and McQuair for aiding and abetting Defendants' alleged

discrimination in violation of the NYSHRL, the Equal Protection Clause, and 42 U.S.C. § 1981. (SAC ¶ 82.) In contrast to Title VII, individual liability is available under the NYSHRL, 42 U.S.C. § 1983, and 42 U.S.C. § 1981. The NYSHRL prohibits aiding and abetting the "doing of any of the acts forbidden under this article." N.Y. EXEC. LAW § 296(6); Feingold v. N.Y., 366 F.3d 138, 157 (2d Cir. 2004); Ramirez v. Hempstead Union Free Sch. Dist. Bd. of Educ., 33 F. Supp. 3d 158, 168-69 (E.D.N.Y. 2014). Thus, an individual who "actually participates" in the conduct giving rise to the claim may be held personally liable. Ramirez, 33 F. Supp. 3d at 169; Wei Hong Zheng v. Wong, No. 07-CV-4768, 2009 WL 2601313, at *6 (E.D.N.Y. Aug. 24, 2009).

Defendants argue that Plaintiff's aiding and abetting claims against Defendants Laria, Zocchia, and McQuair must be dismissed because Plaintiff did not name them in her notice of claim, as required by Education Law § 3813(1). (Defs.' Br. at 21.) New York Education Law § 3813 states that no action shall proceed against a school district or officer of a school unless "it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action . . . is founded was presented to the governing body of said district or school within three months after the accrual of such claim." N.Y. EDUC. LAW § 3813(1). Plaintiff does not dispute that she did not name Laria, Zocchia, and McQuair in her

notice of claim, however, she argues that Defendants Laria (the Superintendent) and Zocchia (the District's Assistant Superintendent of Human Resources) must remain Defendants in this action because they are not "school officers." (Pl.'s Opp. Br. at 19.) Under the New York Education Law, the term "school officer" is defined as follows:

> The term "school officer" means a clerk, collector, or treasurer of any school district; a trustee; a member of a board of education or other body in control of the schools by whatever name known in a union free school district, central school district, central high school district, or in a city school district; a superintendent of schools; a district superintendent; a supervisor of attendance or attendance officer; or other elective or appointive officer in a school district whose duties generally relate to the administration of affairs connected with the public school system.

N.Y. EDUC. LAW § 2(13). Laria, the District Superintendent, is thus explicitly defined as a school officer by the above Education law provision. Moreover, the Court rejects Plaintiff's argument that Laria is exempt from the notice requirement because she retired from her position as the District Superintendent--it is clear that Plaintiff is suing Laria for acts undertaken in her role as the District Superintendent. In addition, even if there is some debate as to whether Zocchia, the District's Assistant Superintendent of Human Resources, falls into the definition of a school officer, he must nevertheless be dismissed from this action because the SAC

does not allege that he was personally involved in any of the incidents at issue. Therefore Laria, Zocchia, and McQuair are DISMISSED as Defendants in this action.

V.  Leave to Amend

Under Federal Rule of Civil Procedure 15(a), "leave to amend shall be freely granted when justice so requires." "Although the decision whether to grant leave to amend is within the discretion of the district court, refusal to grant leave must be based on a valid ground.'" _Oliver Sch., Inc. v. Foley_, 930 F.2d 248, 253 (2d Cir. 1991) (quoting _Ronzani v. Sanofi S.A._, 899 F.2d 195, 198 (2d Cir. 1990). Here, Plaintiff was already given leave to amend the Complaint in the Court's March 2015 Order and has filed three separate iterations of her allegations. Therefore, leave to amend is DENIED.

[BOTTOM OF PAGE INTENTIONALLY LEFT BLANK]

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss (Docket Entry 19) is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's ADA claims and retaliation claims are DISMISSED.  In addition, Plaintiff's claims against Defendants Laria, Zocchia, and McQuair are also DISMISSED and the Clerk of the Court is directed to TERMINATE those parties as Defendants in this action.  Defendants' motion is otherwise DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    March __8__, 2016
          Central Islip, New York